NOT RECOMMENDED FOR PUBLICATION
File Name: 06a0549n.06
Filed: August 2, 2006

No. 05-3476

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

ANTHONY GARNER et al., )
 )
 Plaintiffs-Appellants, )
 )
v. ) ON APPEAL FROM THE UNITED
 ) STATES DISTRICT COURT FOR THE
CUYAHOGA COUNTY JUVENILE ) NORTHERN DISTRICT OF OHIO
COURT et al., )
 )
 Defendants-Appellees. ) OPINION
 )

**Before: GILMAN and SUTTON, Circuit Judges; WISEMAN, District Judge.**[*]

**RONALD LEE GILMAN, Circuit Judge.** Anthony Garner, along with 14 other current

and former African-American employees (collectively, the employees) of the Cuyahoga County

Juvenile Court (CCJC), brought suit in the Court of Common Pleas in Cuyahoga County, Ohio

against CCJC and several of its Caucasian officials and supervisors (collectively, CCJC). The

employees alleged various theories of racial discrimination in violation of state and federal law.

CCJC removed the action to federal court. After one plaintiff-employee and five individual

defendants were dismissed from the action, the district court granted summary judgment in favor

of CCJC, holding that the employees had failed to allege sufficient facts to support their state and

federal claims of unlawful employment discrimination. On appeal, the employees claim that various

---

[*] The Honorable Thomas A. Wiseman, Jr., Senior United States District Judge for the Middle District of Tennessee, sitting by designation.

procedural orders of the district court were motivated by racial bias and that the district court erred in granting summary judgment to CCJC. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

The employees raise virtually identical claims against CCJC, all of which involve allegations of racial discrimination. When the initial complaint was filed in July of 2002, there were only two plaintiffs—Anthony Garner and Tiffanie Dennis. The complaint raised the following claims: (1) termination in violation of Ohio's public policy, (2) employment discrimination in violation of Ohio Revised Code § 4112, (3) an equal-protection violation brought pursuant to 42 U.S.C. § 1983, and (4) malicious conduct warranting a punitive damages award.

Two additional lawsuits involving similar claims were subsequently filed, causing the district court to consolidate the three actions. The second amended complaint named the following plaintiffs: Spencer Bellamy, Vanessa Brown, Sonja Colwell, Tiffanie Dennis, Anthony Garner, Shelley Isom, Terrance Jenkins, Rayshunn Lilly, Heather McCallough, Patricia McNear, Monique Moore, Nathaniel Prather, Bruce Richardson, Thomas Washington, and Kevin Wesley. Ten defendants were named. Two of them—Mark Lusnia and Joseph Russo—were named in their official capacities only. The eight remaining defendants were named both individually and in their official capacities: Janie Carter, Donna Coe, Al David, Jimmy Dimora, Richard Drost, Charvez James, Angelo Lardomita, and Len Munks. Employee Wesley, as well as defendants Carter, David, Dimora, Drost, and James, were later dismissed from the suit. In addition to the counts included

in the original complaint, the employees added state-law claims of intentional infliction of emotional distress, unlawful retaliatory discharge and discipline, civil conspiracy, and civil aiding and abetting. They requested punitive damages in the amount of $10 million dollars.

In July of 2003, CCJC filed a motion for partial judgment on the pleadings against Bellamy, Moore, and Washington, arguing that the federal claims raised by these three employees were barred by the statute of limitations because they had not been employed by CCJC within two years preceding the action. While this motion was pending, the discovery deadline was set for July 31, 2003. In September of 2003, CCJC filed a motion requesting that the district court increase the page limit for dispositive motions from 30 pages to 50 pages, which the court denied. Also in September of 2003—two months after the discovery deadline had passed—the employees requested leave to take an additional deposition, which the court also denied.

CCJC soon thereafter filed 11 motions for summary judgment, pertaining to all the employees other than Bellamy, Moore, and Washington. The employees filed an opposing memorandum accompanied by affidavits and exhibits. At a pretrial conference following the filing of the summary judgment motions and the response, the district court, on its own initiative, permitted the employees to file an additional memorandum in opposition to CCJC's summary judgment motions. They did so in December of 2003.

Also in December of 2003, CCJC sought a continuance of the trial date, originally set for January of 2004, in part due to the pendency of the dispositive motions. The district court agreed to set aside the January trial date. On December 31, 2003, the employees filed a motion to "update

affidavits and exhibits" in response to CCJC's motions for summary judgment. The district court

denied the employees' motion, reasoning that the deadline had long passed.

By March of 2005, the district court had granted summary judgment in favor of CCJC with

respect to all of the employees, including Bellamy, Moore, and Washington. This timely appeal

followed.

## II.  ANALYSIS

**A.      The district court did not abuse its discretion in making various procedural rulings**

Pointing to several of the district court's procedural rulings, the employees argue that the

district court displayed "extreme favoritism and bias" toward CCJC. In particular, the employees

claim that the district court permitted CCJC to file "over 440 pages to support their case," while

denying the employees the opportunity to add a similar amount of pages to supplement their briefs.

They also complain that the district court granted a 14-month extension to CCJC that was prejudicial

to the employees. Throughout this portion of the employees' brief, they routinely characterize the

district court's procedural rulings as racially motivated.

We review the procedural and discovery orders of the district court under an abuse-of-

discretion standard, and we will not disturb the orders unless they resulted in substantial prejudice

to the employees. *See Doe v. Lexington-Fayette Urban County Gov't*, 407 F.3d 755, 765 (6th Cir.

2005)  (holding that the district court did not abuse its discretion in denying a motion to extend

discovery by 30 days). A district court abuses its discretion when it relies on clearly erroneous

findings of fact, improperly applies the law, or applies an improper legal standard. *Romstadt v.*

*Allstate Ins. Co.*, 59 F.3d 608, 615 (6th Cir. 1995).

Although the employees argue that the district court's procedural orders were improper and

racially motivated, they fail to cite any cases directly on point. The cases on which they rely range

from ineffective assistance of counsel to the right of a criminal defendant to a jury trial—cases with

broad statements about due process and equal protection, but with little relevance to the employees'

claims. They also deal with the de novo standard of review that is inapplicable to the present case.

The employees appear to contest seven procedural orders of the district court. As best we

can tell, they are: (1) an order denying the employees' motion to "update" their exhibits and

affidavits, (2) an order denying the employees' request to take an additional deposition after the

discovery deadline had passed, (3) an order denying the employees' motion to strike CCJC's motion

for summary judgment, (4) an order striking certain portions of the employees' affidavits for failure

to comply with the Federal Rules of Civil Procedure, (5) an order extending the deadline for CCJC

to file its motion for partial judgment on the pleadings, (6) an order continuing the trial date until

the district court ruled on the summary judgment motion, and (7) an order granting CCJC's motion

for an extension of time in which to supplement the record.

The employees couch their objections to these procedural rulings in broad terms of due

process and equal protection, arguing that the district court's bias in favor of the "white defendants"

motivated its orders. Because they do not articulate the precise grounds for their objections to each

of the district court's orders, we are unable to respond to them one-by-one. Instead, we will focus

on the two orders to which the employees have directed their most pointed criticism—the order

denying the employees' motion to "update" their exhibits and affidavits and the order denying their motion to strike portions of CCJC's motions for summary judgment.

In a motion dated March 25, 2004, the employees requested leave to supplement their memorandum in opposition to CCJC's summary judgment motions with additional briefing and exhibits. They argued that this request was warranted because CCJC submitted "over 400 pages in their [summary judgment] brief," making it difficult for the employees to respond within the designated page limits. In an earlier order, the district court had granted the employees 30 additional pages for a supplemental memorandum, but had denied their request to "update the [corresponding] affidavits and documents." The employees characterized this decision of the district court as "patently unfair," and requested remediation in their March 25, 2004 motion. The district judge denied the motion, reasoning that although no page limitation had ever been designated for evidentiary materials, the deadline for supplementing the record had expired.

In another motion dated March 25, 2004, the employees requested that the district court strike portions of CCJC's summary judgment motions and corresponding documents. The employees argued that the "defendants completely ignored [the order establishing the 30-page-per-motion limit] and submitted over 400 pages for their brief," which resulted in "unfair[] prejudice" to the employees. On appeal, the employees claim that the district court unfairly permitted CCJC to exceed the page limit, and that the district court should have either given them the same limit or stricken the excess portion of CCJC's submissions. They argue that this would have allowed the employees to submit additional evidentiary materials after the discovery deadline had ended. Moreover, they claim that the district court's orders were racially motivated.

The employees, however, fail to recognize two critical facts. First, the district court never established a page limitation for evidentiary materials. Many of the "extra" pages about which the employees complain, therefore, were not subject to the 30-page-per-motion limit. Because the employees themselves submitted over 300 pages of affidavits and exhibits with their original memorandum in opposition to CCJC's summary judgment motions, one can assume that the employees were well aware that the district court had imposed no such limit. Second, although the district court *did* impose a 30-page limit for briefing the dispositive motions, the 30-page limit applied to *each* of CCJC's motions for summary judgment. With 14 employees remaining in the case, there were 14 motions for summary judgment or for partial judgment on the pleadings filed by CCJC.

The employees correctly note that CCJC exceeded its page limitation when it submitted the motions for summary judgment. As a result of CCJC's excess, the district court, on its own initiative, granted the employees additional pages for their memoranda in opposition to the motions for summary judgment. The employees failed to take full advantage of this extension, choosing to submit only 18 additional pages. At no point did the employees ask the district court for clarification of the page limits or file individual responses to CCJC's summary judgment motions. Instead, the employees chose to respond to all of CCJC's motions with one response in opposition.

The employees' contention that the district court's decisions were racially motivated and that it issued orders in the present case that favored the "white defendants" is not borne out by the record. Claiming in summary fashion that "there was no justifiable reason" for the court's actions, the employees have not pointed to any actual evidence of bias contained in the orders or otherwise

evident from their interaction with the district court. At various points throughout the litigation, moreover, the district court issued orders that were beneficial to the employees and adverse to CCJC. For example, the district court denied CCJC's motion requesting an extension of the page limitation to 50 pages per motion. The district court also sua sponte granted a 30-page extension to the employees after CCJC submitted its motions for summary judgment. These are not the actions of a racially motivated district court. Moreover, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994).

Our review of the record also indicates that the district court did indeed have good grounds for its various procedural rulings. It was attempting to manage a case with 15 original plaintiffs and 10 defendants, a difficult task by any measure. The employees have presented no evidence that the orders denying their motions to "update" their evidentiary materials and to strike portions of CCJC's submissions, along with the other orders mentioned only in passing by the employees in their brief, were issued for any reason other than to maintain the district court's control over the discovery process. Such matters of docket control are in the sound discretion of the district court. *In re Air Crash Disaster*, 86 F.3d 498, 517 (6th Cir. 1996) (holding that the district court did not err in adhering to its original discovery deadline). In sum, we find no evidence that the district court abused its discretion regarding the procedural orders. The employees' claims of racial motivation or bias are therefore meritless.

**B.     The district court did not err in granting summary judgment to CCJC**

Orders granting summary judgment to CCJC were issued with respect to the remaining 14 plaintiffs. The district court held that Bellamy, Brown, Dennis, Garner, Isom, Lilly, Moore,

Richardson, and Washington had failed to present *any* evidence to support their state and federal claims of racially motivated employment discrimination and retaliation. It further held that Colwell, Jenkins, McNear, McCollough, and Prather had failed to present *sufficient* evidence to support their claims. Aside from the differences between the failure to present any evidence and the failure to present sufficient evidence, the district court's summary judgment orders contain remarkably similar legal analysis.

Although the employees argue that the district court ignored or "changed" important evidence of racial discrimination on the part of CCJC, this contention is unsupported by the record. The district court engaged in a careful analysis of the facts as they pertained to each employee's claims, and it determined that the allegations of racial discrimination and other unlawful behavior were unfounded. In their brief, the employees continue to proffer the same assertions raised below, failing in almost all instances to cite to the record. Not only do the employees fail to base their allegations on facts in the record, they also fail to offer any relevant criticism of the district court's legal analysis.

Because the reasoning that supports summary judgment for CCJC has been clearly articulated by the district court in its thorough and well-written opinions, and because we are unpersuaded by the employees' argument that the court displayed favoritism and bias in rendering its procedural orders, the issuance by us of a detailed written opinion would be unduly duplicative. The summary judgment orders rendered by the Honorable John R. Adams, Judge of the United States District Court for the Northern District of Ohio, are accordingly **AFFIRMED** on the basis of the reasoning detailed in his Opinions.

*No. 05-3476*
*Garner et al. v. Cuyahoga County Juvenile Court et al.*